**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| **PAULA CAPUTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **14-14159-FDS** |
| | ) | |
| **QUAD/GRAPHICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an employment dispute arising out of an alleged unlawful termination on the basis

of age.  Paula Caputy was one of five Sales and Service Representatives ("SSRs") at

Quad/Graphics, Inc.  In the context of a reduction-in-force, she was selected for termination.

Caputy, at age 64, was the oldest of the SSRs.  The other SSRs ranged in age from 29 to 53.

Unknown to her, the company's most recent SSR performance evaluations had also ranked her

last out of the five SSRs.  She had received an average rating of 3.2 out of 5, while the next

lowest SSR received an average rating of 4.0.  However, at the time of her termination, she was

told that her termination was only because of the economy, and had nothing to do with her

performance, which had been "fine."

Caputy then brought this action, alleging age discrimination in violation of Mass. Gen.

Laws ch. 151B.  Quad/Graphics has moved for summary judgment.  For the reasons stated

below, that motion will be granted.

I.       **Background**

The facts are set forth in the light most favorable to plaintiff, the non-moving party.

A.       **Factual Background**

Quad/Graphics, Inc. provides multichannel communications solutions, including print and other platforms, for a variety of markets.  (Def. SMF ¶ 1).  Sales Representatives sell the company's services to new and existing customers.  (Def. SMF ¶ 2).  Sales and Service Representatives ("SSRs") support the Sales Representatives by determining project pricing, preparing customer proposals, overseeing projects, and ensuring customer satisfaction.  (Def. SMF. ¶ 3).

Paula Caputy was hired as an SSR at Quad/Graphics in September 2006.  (Def. SMF ¶ 4). During the relevant time period, Quad/Graphics employed five SSRs and four Sales Representatives.  (Def. SMF ¶ 7).  The SSRs and sales representatives were directly supervised by Thomas O'Brien, the Sales Director.  (Def. SMF ¶ 8).  O'Brien reported directly to John Logan, the Regional Vice President of Sales for the East Coast, who in turn reported directly to James Capstick, the Vice President of Marketing Solutions.  (Def. SMF ¶ 9).

As Sales Director, O'Brien was responsible for conducting performance evaluations of the Sales Representatives and SSRs.  (O'Brien Aff. ¶ 10).  In addition to his own evaluations, O'Brien had the Sales Representatives evaluate the SSRs.  (O'Brien Dep. at 45, 55).  In December 2011, he asked the Sales Representatives to complete performance evaluations of the SSRs, raking each SSR on a five-point scale in sixteen different performance areas.  (O'Brien Dep. at 45; O'Brien Aff. ¶ 11).  O'Brien and the Sales Representatives all completed the evaluations, and he then compiled the results to create average ratings for each SSR.  (O'Brien Aff. ¶ 11; O'Brien Dep. at 55).  Caputy was scored as the lowest performing SSR out of five.

(O'Brien Aff. ¶ 11).  She received an average rating of 3.2; the next lowest SSR received an

average rating of 4.0, and the highest rated SSR received an average rating of 4.6.  (O'Brien Aff.

¶ 13; Def.'s Ex. C)  Caputy was the oldest SSR, at age 64; the other SSRs were 53, 52, 46, and

29 years old.  (Medeiros Aff. ¶ 6).  Of the three highest-rated SSRs, two were in their fifties.

(Def's Ex. C; Medeiros Aff. ¶ 6).

        In January 2012, Quad/Graphics determined that it needed to reduce its staff.  (O'Brien

Dep. at 39; Capstick Dep. at 10–11).  O'Brien was asked by his superiors, Logan and Capstick,

to identify individuals from his office to consider including in the reduction-in-force.  (Capstick

Dep. at 11–12).  O'Brien selected Caputy.  (O'Brien Dep. at 40; Capstick Dep. at 12).  He

contends that he was unaware of her age at the time of her termination.  (O'Brien Dep. at 20).

He also contends that his decision was based on the December 2011 performance evaluations, in

which she was rated lowest out of five, as well as on seniority.  (O'Brien Dep. at 47–49).

Caputy, who was hired in 2006, had worked at Quad/Graphics for approximately five years.

(Medeiros Aff. ¶ 6).  Two other SSRs had begun working for Quad/Graphics in 2010; however,

they had joined the company when it acquired their previous employers.  (*Id.*).  They were given

credit for their years spent at their previous employers, making their effective start dates at

Quad/Graphics 2005 and 1980.  (*Id.*).

        Quad/Graphics required O'Brien to complete SSR Evaluation and Measurements

("SEAM") questionnaires for each employee identified for possible termination in the reduction-

in-force in order to "double check" their selection.  (Capstick Dep. at 20–21, 27).  When he sent

Caputy's SEAM questionnaire to Capstick and Logan on January 16, 2012, O'Brien attempted to

prevent her termination.  (O'Brien Dep. Ex. 3).  He wrote:

>        I would not identify Paula [Caputy] as someone who is underperforming on her
>        overall job.  However, relative to her SSR peers[,] she ranks lower. . . . As we all

>     make this difficult decision, I respectfully ask that we re-consider ending her
>     employment based on the ramifications of how it will affect Boston Sales &
>     Quad's ability to grow.

(*Id.*).  Later than same day, Logan sent an e-mail to Capstick stating that he agreed with

O'Brien's position.  (*Id.*).

    Despite O'Brien's request, Quad/Graphics moved forward with Caputy's termination.

(O'Brien Dep. at 28–29).  On January 26, 2012, O'Brien, along with Shelly Medeiros, the

Human Resources Manager, met with Caputy to inform her that she was being laid off.  (O'Brien

Dep. at 29).  Medeiros did not participate in the decision to terminate Caputy; she was present

only to go over the logistics of the termination.  (Medeiros Aff. ¶ 8).

    Relying on a script prepared by human resources, O'Brien told Caputy:

>     As you may well be aware, our Company continues to be challenged by the soft
>     economy, and weak volumes and very aggressive pricing in the printing industry.
>     To keep the Company strong and healthy, we need to manage for the realities of
>     the marketplace, including better matching our labor resources to current and
>     anticipated workload volumes in our plants.  Unfortunately, your job is being
>     eliminated . . . .

(O'Brien Dep. at 10–11 and Ex. 1).  O'Brien told Caputy that her termination was

because of the economy, and that it had nothing to do with her performance, which he

said had been "fine."  (Caputy Dep. at 63–64).  O'Brien did not inform her that she had

been selected for termination based on the SSR performance evaluations, which had

ranked her last.  (O'Brien Dep. at 55–56).  He did not share the results of the evaluation

because he considered them to be confidential.  (O'Brien Dep. at 48).

    O'Brien then left the meeting.  (O'Brien Dep. at 10–11).  Medeiros remained to

go over Caputy's termination paperwork.  (Caputy Dep. at 65–66).  She gave Caputy a

number of documents, including one that listed all of the SSRs in the Boston sales group,

along with their ages.  (Caputy Dep. at 79 and Ex. 1).  That document showed that

Caputy, at age 64, was the oldest of the group.  (Caputy Dep. Ex. 1).  Acknowledging

that the printing industry was struggling, Caputy expressed concern as to whether she

would be able to find another job.  (Caputy Dep. at 65).  She contends that in response,

Medeiros suggested that, though she did not know how old Caputy was, she might think

about retiring.  (Caputy Dep. at 65–66).[1]

## B.    Procedural Background

On October 15, 2014, plaintiff filed the complaint in this action in the Massachusetts

Superior Court, alleging age discrimination in violation of Mass. Gen. Laws ch. 151B, § 4(1B).

On November 13, 2014, defendant removed the action to this court on the basis of diversity

jurisdiction.  On November 20, 2014, defendant moved to dismiss the complaint for failure to

state a claim upon which relief can be granted.  That motion was denied on May 11, 2015.

Defendant has now moved for summary judgment in its favor.

## II.    Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when

the moving party shows that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[]

mandates the entry of summary judgment 'against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir.

1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that

---

[1] Medeiros denies making that statement.  (Medeiros Aff. ¶ 10).

determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

## III.   Analysis

Massachusetts General Laws chapter 151B protects individuals between the ages of 40 and 65 from adverse employment decisions based on age.  *See* Mass. Gen. Laws ch. 151B, § 4(1B); *Knight v. Avon Prods., Inc.*, 438 Mass. 413, 424 n.6 (2003).  Where a plaintiff alleges disparate treatment based on a protected characteristic, Massachusetts courts follow the same burden-shifting analytical framework that is applied in the federal Title VII context.  *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127–28 (1997).  Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Id.* at 128 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  If that burden is met, unlawful discrimination is presumed and the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its [employment] decision and to 'produce credible evidence to show that the reason or reasons advanced were the real reasons.'"  *Id.* (quoting *Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 442 (1995)) (internal citations omitted).  If the defendant meets that burden, then "the presumption of discrimination vanishes, and the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant's proffered reason for its employment decision was not the real

reason" and that "it was more likely than not that the articulated reason was pretext for actual discrimination." *Id.* (internal quotation marks omitted).

## A.     *Prima Facie* Case

"Generally, a plaintiff who is terminated from her position establishes a *prima facie* case of discrimination by producing evidence that she is a member of a class protected by [Mass. Gen. Laws ch. 151B]; she performed her job at an acceptable level; she was terminated; and her employer sought to fill her position by hiring another individual with qualifications similar to hers." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 41 (2005).  However, "[a]s generally formulated, the fourth element is nonsensical in a reduction in force case:  the plaintiff is not replaced, nor does her employer 'seek to fill' the position, for the very purpose of a workforce reorganization is generally to reduce the number of employees." *Id.*  Under Massachusetts law, to satisfy the fourth element in a reduction-in-force case, a plaintiff must produce "some evidence that her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination."[2] *Id.* at 45.  The plaintiff's burden of establishing a *prima facie* case is "not intended to be onerous.  It is meant to be a 'small showing' that is 'easily made.'" *Id.* (quoting *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003)).

Here, there is some doubt as to whether plaintiff has met that burden.  Plaintiff contends that her *prima facie* burden is satisfied simply because defendant retained younger employees in her same position.  But that is not enough to satisfy the Massachusetts standard.  Under federal law, a plaintiff can satisfy the fourth element of a *prima facie* age-discrimination case simply by

---

[2] In establishing that standard, the Massachusetts Supreme Judicial Court adopted the majority view among federal circuits, which "permits a plaintiff to satisfy the fourth element by producing some evidence 'from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Sullivan*, 444 Mass. at 43 (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)). Massachusetts explicitly rejected the less strict standard applied in some circuits, which allows plaintiffs to satisfy the fourth element "merely by showing that 'other unprotected workers were retained.'" *Id.* at 42 (quoting *Marzano v. Computer Science Corp.*, 91 F.3d 497, 506 (3d Cir. 1996)).

showing that her employer retained unprotected or younger workers in her same position.  *See*

*Currier v. United Techs. Corp.*, 393 F.3d 246, 254 (1st Cir. 2004).  But in *Sullivan*, the

Massachusetts Supreme Judicial Court adopted a more generally phrased standard.  *Sullivan*, 444

Mass. at 44–45.  As the SJC explained, the fact that an employer retained non-protected

employees in the plaintiff's same position may, in some cases, be sufficient to raise a reasonable

inference of discrimination, but in other cases it would not.  *Id.* at 44.  What matters, therefore, is

not simply whether defendant retained younger workers, but whether the circumstances are

sufficient to raise a reasonable inference of unlawful discrimination. [3]

Here, it is doubtful whether the circumstances are sufficient to raise such an inference.

The undisputed evidence shows that plaintiff had the lowest performance evaluations out of the

five SSRs.  As the *Sullivan* court explained, the purpose of the *prima facie* case requirement "is

to identify those circumstances where the employer's actions, 'if left unexplained, are more

likely than not based on unlawful discrimination.'"  444 Mass. at 43 (quoting *Lewis v. Boston*,

321 F.3d 207, 216 (1st Cir. 2003)).  That is achieved by eliminating the most common

nondiscriminatory reasons for an adverse employment action, which, in a reduction-in-force

case, are "lower proficiency and/or random chance."  *Id.* at 43–44 (internal quotation marks

omitted).   Plaintiff does not dispute the accuracy or fairness of the December SSR rankings, nor

does she contend that the performance of another SSR warranted his or her selection for

termination instead of her.  (Caputy Dep. at 58–59, 72).  Thus, it appears that plaintiff was

terminated for one of the most common nondiscriminatory reasons:  lower proficiency.

Plaintiff contends that discriminatory intent can be inferred from the fact that defendant

---

[3] As this Court explained in its earlier order denying defendant's motion to dismiss, age is not a binary characteristic.  *See Caputy v. Quad/Graphics, Inc.*, 2015 WL 2208825 at *4 (D. Mass. 2015).  Therefore, while three of the retained SSRs were in fact over 40 and therefore within the class protected by chapter 151B, it is nonetheless relevant that they were younger than plaintiff.

treated her differently from the other SSRs, who (she says) were similarly situated to her in all relevant aspects. However, the other SSRs were not similarly situated in all relevant aspects. Even assuming that, as plaintiff states, they performed the same job functions and had the same skill sets, they differed in one key aspect: their performance evaluations. Clearly, an employee with an average rating of 3.2 out of 5 is not similarly situated in all relevant aspects to those with average ratings of 4.0, 4.2, and 4.6.

In short, it is unclear whether plaintiff has produced evidence that her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination, as she must in order to meet her burden of establishing a *prima facie* case of discrimination. However, because defendant has offered a legitimate nondiscriminatory reason for her termination, and she has failed show that the proffered legitimate reason was pretextual, the Court will assume that she has established a *prima facie* case.

### B.      Legitimate Nondiscriminatory Reason for Termination

Defendant contends that plaintiff was terminated because she was the lowest-rated SSR as of the December 2011 ranking. That is a legitimate, nondiscriminatory reason for her termination. *See Sullivan*, 444 Mass. at 43–44 (describing lower proficiency as the most common nondiscriminatory reason for layoff in a reduction in force). The Court will then proceed to the third step of the analysis.

### C.      Pretext

At the third step, the plaintiff must produce evidence that the defendant's stated reason for her termination was pretextual and that the real reason was discriminatory. Pretext can be established, among other ways, by showing inconsistencies in the employer's stated legitimate reason for termination. *See Rhodes v. JPMorgan Chase & Co.*, 562 F. Supp. 2d 186, 193 (D.

Mass. 2008).

Defendant has produced credible evidence that the reason provided was the real reason. *See Matthews*, 426 Mass. 122 at 128 (holding that defendant meets its burden by articulating nondiscriminatory reason and producing evidence that the reason advanced was the real reason). For example, O'Brien referred to the fact that plaintiff ranked lower than her peers when explaining to Capstick and Logan why she was selected for the termination. (O'Brien Dep. Ex. 3). Defendant also produced the relevant SSR evaluations, which support that plaintiff was ranked lowest among the SSRs by a fairly significant margin. (Def. Exs. 2, 4).

Plaintiff contends that O'Brien's statement that she was not being terminated because of her work, which he said had been "fine," is materially inconsistent with defendant's later assertion that she was terminated because she was ranked last of out all SSRs. It is not. The evidence presented suggests that plaintiff would not have been terminated but for economic necessity. While plaintiff was selected for the reduction-in-force based on her rating, the evidence suggests that her rating—by itself, and without the "soft economy" that necessitated the reduction-in-force in the first place—would not have resulted in her termination.[4] Therefore, O'Brien's statement that she was not being terminated because of her performance was not inconsistent with defendant's later assertion that she was terminated because she was ranked last among all SSRs.

Any inference of pretext is further diminished by the fact the O'Brien has explained why he did not tell plaintiff, at the time of her termination, that she was selected based on her performance reviews. *Cf. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408,

---

[4] The fact that O'Brien attempted to save plaintiff's job—writing to Capstick and Logan that plaintiff was not "underperforming on her overall job," (O'Brien Dep. Ex. 3)—supports the conclusion that she would not have otherwise been selected for termination.

415 (5th Cir. 2007) (holding that jury could infer pretext from unexplained inconsistency);

*Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003) (same).  O'Brien testified at his

deposition that he did not share the results of the performance evaluations with plaintiff because

he considered them to be confidential.  (O'Brien Dep. at 48).[5]

Plaintiff also contends that discriminatory intent can be inferred from Medeiros's

statement that she might want to think about retiring.  That statement is insufficient to give rise

to an inference of discrimination for two reasons.  First, "[i]solated or ambiguous remarks,

tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's

discriminatory intent."  *Blare*, 419 Mass. at 447 n.9 (internal quotation marks omitted).  The

statement is the only remark remotely tending to suggest animus that plaintiff has identified, and

it is ambiguous as to whether it actually reflects age-based animus.  It is undisputed that

Medeiros made that statement after plaintiff expressed concern about her ability to find another

job given the declining nature of the printing industry.  (Pl. SMF ¶¶ 39–40).  In that context, the

statement does not suggest hostility toward older workers, implying that plaintiff is not

competent to work given her age.  *Cf. id.* at 447 (holding that three remarks by supervisor

"regarding the ability of [plaintiff] to work considering his age," together with other evidence,

raised genuine issue of material fact as to whether defendants discriminated on the basis of age).

Second, the probativeness of "stray remarks" is further limited if "they were not related to the

employment decision in question or were made by nondecisionmakers."  *Flebotte v. Dow Jones

& Co., Inc.*, 51 F. Supp. 2d 36, 43 (D. Mass. 1999) (internal quotation marks omitted).  The

---

[5] Courts should also be cautious about punishing employers who attempt to treat employees with respect and spare them unnecessary embarrassment.  Suppose, for example, an employer decides to lay off an employee for two reasons:  (1) because of a need to downsize the company based on economic factors and (2) because the employee is performing poorly.  The employer might elect to advise the employee that the layoff was only due to economics, simply to avoid unnecessarily shaming or embarrassing the employee.  Under such circumstances, it is difficult to see why the courts should effectively force the employer to state both reasons to the employee, for fear that to do otherwise might be labeled an "inconsistency" and therefore a "pretext."

statement was made after the decision to terminate plaintiff had been finalized, and it is undisputed that Madeiros was not involved in that decision.

Finally, pretext may be shown by "identify[ing] and relat[ing] specific instances where persons similarly situated in all relevant aspects were treated differently." *Matthews*, 426 Mass. at 129 (internal quotation marks omitted). However, as discussed above, the other SSRs were not similarly situated to plaintiff in all relevant aspects.

## IV.    Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

                                                /s/ F. Dennis Saylor IV
                                                F. Dennis Saylor IV
Dated: December 2, 2016                          United States District Judge